UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEILL ALEJANDRO HERNANDEZ BETANCOURT (A-Number: 074-135-953),<br>Petitioner,<br>v.<br>DEPARTMENT OF HOMELAND SECURITY,<br>Respondent. | Case No. 1:26-cv-4501-DAD-JDP<br><br>FINDINGS AND RECOMMENDATIONS |

Petitioner Neill Alejandro Hernandez Betancourt, a citizen of Cuba, was admitted to the United States on March 15, 1996, through the Cuban Humanitarian Parole program. He was ordered removed to Cuba by an immigration judge on April 7, 2015. Respondent re-detained petitioner on February 9, 2026, and seeks to remove him to Mexico. Petitioner has not consented to removal to Mexico and remains in custody.

Petitioner, proceeding pro se, seeks a writ of habeas corpus under 28 U.S.C. § 2241, alleging that his detention is illegal under *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001) and 8 U.S.C. § 1231(a)(6) as his removal is not reasonably foreseeable. Respondent argues that petitioner's ongoing detention is reasonable because petitioner has refused to consent to removal to Mexico, a country to which he has not been ordered removed. For the following reasons, I

recommend that the petition be granted and that petitioner be immediately released.

**Background**

Petitioner Neill Alejandro Hernandez Betancourt, a citizen of Cuba, was admitted to the United States on March 15, 1996, through the Cuban Humanitarian Parole program. ECF No. 7-2 at 1. In 2014, petitioner was convicted of possession of marijuana for sale and carrying a concealed weapon and received a sentence of two years of probation. *Id.* At some point thereafter, immigration authorities took him into custody, and on December 8, 2014, they released petitioner from immigration custody on an order of supervision. ECF No. 7-10; ECF No. 7-11. An immigration judge ordered petitioner removed to Cuba on April 7, 2015. *See* ECF No. 7-1. It appears that petitioner was placed back into immigration custody, as he was released on another order of supervision on July 16, 2015, because immigration authorities had not been able to remove him to Cuba. ECF No. 7-12.

ICE encountered petitioner in December 2025, when he was in state custody serving a three-year sentence for crimes that include cannabis possession, driving on a revoked license, obstructing a police officer, theft of a firearm, and battery. ECF No. 7-2 at 2. ICE re-detained him on February 9, 2026, upon his release from criminal custody. ECF No. 1 at 1; ECF No. 7-5 at 1.

There is no indication in the record that ICE attempted to procure travel documents for petitioner's removal to Cuba. On the contrary, on February 12, 2026, June 3, 2026, and June 10, 2026, ICE gave petitioner notice that it intends to remove him to Mexico. ECF No. 7-6 at 1; ECF No. 7-7 at 1; ECF No. 7-8 at 1. On July 6, 2026, ICE gave petitioner notice that it intended to keep him in custody because of his "failure to comply" with removal to Mexico, which it deemed in violation of 8 CFR § 241.4(g). ECF No. 7-9. This notice told petitioner that ICE had decided to "extend" the statutory removal period because petitioner was failing to comply with his "obligation" to leave for Mexico. *Id.* Petitioner has not consented to removal to Mexico and remains in custody.

**Legal Standard**

A federal court may grant habeas relief when a petitioner shows that his custody violates

federal law. 28 U.S.C. §§ 2241(a), (c)(3), 2254(a); *Williams v. Taylor*, 529 U.S. 362, 374-75 (2000). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). A district court's habeas jurisdiction includes challenges to immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

**Analysis**[1]

Petitioner asserts that his removal is not reasonably foreseeable under 8 U.S.C. § 1231(a)(6) and *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001), and thus his continued detention is no longer authorized by statute.[2] ECF No. 1 at 2, 6-7. Respondent argues that petitioner is properly subject to continued detention pursuant to 8 U.S.C. § 1231(a)(6) until he agrees to be removed to Mexico. ECF No. 8 at 4.

In *Zadvydas*, the Supreme Court considered prolonged immigration detention after a final

---

[1] Respondents argue that petitioner's failure to list his immediate warden as a respondent deprives this court of jurisdiction. *See* ECF No. 7 at 1, n.1. Petitioner named as respondents "Department of Homeland Security, U.S. Attorney General, Immigration and Customs Enforcement." ECF No. 1 at 1. While the pleading requirement of 28 U.S.C. § 2242 requires a habeas petitioner to name "the person with the ability to produce the prisoner's body before the habeas court," *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004), and the proper respondent is the "warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official," *id*. at 435, n.8, I find, in the interest of justice, that the warden of petitioner's detention facility be added as a party. *See Melian S. v. U.S. Att'y Gen.*, No. 1:26-cv-4512-TLN-CKD, 2026 WL 1862745, at *2 (E.D. Cal. June 29, 2026); *Islamov v. Doe*, No. 26-cv-1528-JES-VET, 2026 WL 1179873, at *3 (S.D. Cal. Apr. 30, 2026); *Yevhenii v. Mullin*, No. 3:26-cv-2228-JES-MMP, 2026 WL 1179869, at *2 (S.D. Cal. Apr. 30, 2026); *Devilmar v. U.S. Immigr. & Customs Enf't*, No. 3:26-cv-0009-JES-MSB, 2026 WL 130387, at *1 (S.D. Cal. Jan. 16, 2026); *Guatam v. Corr. Corp of Am.*, No. 3:25-cv-3600-JES-DEB, 2026 WL 25846, at *2 (S.D. Cal. Jan. 5, 2026); *Herrera-Ramirez v. United States*, No. 2:25-cv-1749-MMD-EJY, 2025 WL 3239043, at *2 (D. Nev. Nov. 19, 2025).

[2] Petitioner's pro se filing is entitled to liberal construction. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also Charan S. v. Warden of the Cal. City Det. Facility*, No. 1:26-cv-3017-TLN-JDP, 2026 WL 1144158, at *1 n.1 (E.D. Cal. Apr. 28, 2026) (applying liberal construction to pro se immigration habeas filing).

order of removal. Although the government has statutory authority to detain noncitizens for removal, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Zadvydas*, 533 U.S. at 699. The Supreme Court established a burden-shifting framework to determine whether continued immigration detention is lawful and adopted a presumption that immigration detention is reasonable for a period of up to six months, after the final order of removal, when the detention is related to effectuating removal. *Id.* at 701.

The immigration court ordered petitioner removed to Cuba on March 26, 1992. ECF No. 8-1 at 3. *Zadvydas'* six-month presumptively reasonable period began that day. *See Zadvydas*, 533 U.S. at 682; 8 U.S.C. § 1231(a)(1)(B)(i). Immigration authorities held petitioner in custody from at least March 26, 1992, to September 28, 1992, to attempt to remove him to Cuba. ECF No. 8-1 at 3. They then released petitioner on an order of supervision when they could not remove him. *Id.*

The six-month presumptively reasonable time-period under *Zadvydas* "does not reset when the government detains [a non-citizen] under 8 U.S.C. § 1231(a), releases him from detention, and then re-detains him again." *Aaron H. v. Chestnut*, No. 1:26-cv-1232-TLN-SCR, 2026 WL 1398910, at *1 (E.D. Cal. May 19, 2026) (quoting *Sied v. Nielsen*, No. 17-cv-6785-LB, 2018 WL 1876907, at *6 (N.D. Cal. Apr. 19, 2018)); *see also Siguenza v. Moniz*, 2025 WL 2734704, at *3 (D. Mass. Sept. 25, 2025) ("Most courts to consider the issue have concluded that the *Zadvydas* period is cumulative, motivated, in part, by a concern that the federal government could otherwise detain noncitizens indefinitely by continuously releasing and re-detaining them."). Accordingly, immigration authorities already detained petitioner for the presumptively reasonable six-month period in 1992, and his current detention, which started on February 9, 2026, is just shy of six-months as well.

After the first six months of detention, "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701. Petitioner has given the court good reason to believe that his removal to Cuba is not reasonably foreseeable. *See* ECF No. 1 at 2. Immigration authorities previously detained

petitioner for six months in 1992 and were not able to remove him to Cuba. *See* ECF No. 8-1 at 3. They have not removed petitioner to Cuba during this detention period, and the evidence indicates that they have made no effort to do so. As support for his allegation that his removal to Cuba is not reasonably foreseeable, petitioner attaches two detainee request forms where ICE staff notified him that he would have to agree to be removed to a third country. *See* ECF No. 1 at 10-11. On April 17, 2026, ICE staff told petitioner, "[t]he third country removal would be to Mexico. And Cuba is very strict with who we send back to them so Cuba most likely won't take you." *Id.* at 11.

As petitioner has given me good reason to believe that his removal to Cuba is not reasonably foreseeable, the burden shifts to respondent. Rather than rebut petitioner's evidence, respondent confirms that "to date, Cuba has not agreed to repatriate Petitioner." ECF No. 7. Further, respondent provides no evidence or argument that it ever sought travel documents for petitioner's removal to Cuba. *See* ECF No. 7. On the contrary, within three days of petitioner's re-detention, three days after petitioner's re-detention, respondent notified him on February 12, 2026, that it intended to remove him to Mexico. ECF No. 7-6. Respondent again provided petitioner notice on June 3, 2026, and June 10, 2026, of its intent to remove him to Mexico. ECF No. 7-7; ECF No. 7-8. Respondent states that "ERO-ICE has repeatedly asked Petitioner to cooperate in his removal by agreeing that he will board a commercial flight to Mexico, but Petitioner has repeatedly refused to cooperate." ECF No. 7 at 3.

Petitioner has no removal order to Mexico, *see* ECF No. 7-1, and there is no legal requirement that he cooperate with removal to that country. *See Obando Vargas v. Blanche*, No. 1:26-cv-5343-DAD-AC, 2026 WL 2056618, at *2 (E.D. Cal. July 16, 2026) (rejecting the respondents' argument that the petitioner may be detained indefinitely "because [he] is not agreeing to voluntarily depart to a country he is not from and is under no legal obligation to go to"); *Torres Cruz v. Chestnut*, No. 1:26-cv-4690-DAD-SCR, 2026 WL 2057108 (E.D. Cal. July 16, 2026) (calling such argument "frivolous"). Respondent cites *Pelich v. I.N.S.*, 329 F.3d 1057, 1058 (9th Cir. 2003), for the proposition that petitioner has the keys to his freedom in his pocket, but *Pelich* involved a removal to the country in the removal order, not—as here—removal to a

third country to which petitioner has no obligation to go. Respondent fails to cite authority holding that a petitioner may be detained indefinitely until he finally capitulates to removal to a third country.

In *Zadvydas*, the Court directed lower courts to "measure reasonableness . . . in terms of the statute's basic purpose, . . . assuring the alien's presence at the moment of removal." *Zadvydas*, 533 U.S. at 699. I find that the evidence before me shows no significant likelihood of removal in the reasonably foreseeable future. Respondent's attempts to remove petitioner to Mexico, where he does not consent to be removed, do not satisfy its burden under *Zadvydas*.

As there is no "significant likelihood that petitioner will be removed in the reasonably foreseeable future," his continued detention is unlawful. *See Aaron H.*, 2026 WL 139890, *2; *Hoac v. Becerra*, No. 2:25-cv-1740-DC-JDP, 2025 WL 1993771, at *4-5 (E.D. Cal. July 16, 2025); *Castillo Rivas v. Bondi*, No. 26-cv-0134-KKE, 2026 WL 295705, at *3 (W.D. Wash. Feb. 4, 2026) (holding that the petitioner was entitled to release under *Zadvydas* where the petitioner, a Venezuelan national, refused to be removed to Mexico). I recommend that petitioner be immediately released from immigration custody.

**Conclusion**

Accordingly, the Clerk of Court is hereby directed to add the Warden of the California City Detention Facility, Christopher Chestnut, as a respondent in this matter. .

Further, it is hereby RECOMMENDED that:

1. The petition for writ of habeas corpus, ECF No. 1, be GRANTED.

2. Respondent's motion to dismiss, ECF No. 7, be DENIED.

3. Respondent be ordered to immediately release petitioner (A-Number: 074-135-953) from its custody subject to the previously-imposed conditions of release, if any.

4. Respondent be ENJOINED AND RESTRAINED from re-detaining petitioner unless it obtains a travel document for his removal, if necessary, and follows all procedures set forth in 8 C.F.R. §§ 241.4(l), 241.13(i), and any other applicable statutory and regulatory procedures.

5. The Clerk of Court be directed to serve California City Detention Facility with a copy of this order.

6. The Clerk of Court be ordered to enter judgment accordingly and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within seven days of service of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Any such document should be captioned “Objections to Magistrate Judge’s Findings and Recommendations,” and any response shall be served and filed within seven days of service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court’s order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: August 7, 2026

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE